UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **OMNI ENVIRONMENTAL SOLUTIONS INC ET AL** | **CASE NO.  6:22-CV-05939** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **IRONSHORE SPECIALTY INSURANCE CO** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is *Motion to Transfer the Instant Action to Oklahoma* filed by Defendant, Ironshore Specialty Insurance Company. (Rec. Doc. 39). Plaintiffs, Omni Environmental Solutions, Inc. and A&A Tank Truck Co. (referred to collectively as "Omni/A&A"[1]), opposed the motion (Rec. Doc. 44), and Ironshore replied (Rec. Doc. 48). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Ironshore's motion be denied.

---

[1]   Omni is A&A's parent company. Rec. Doc. 44-4, ¶9.

**Facts and Procedural History**

This suit is one in a series of suits stemming from a 2020 saltwater contamination on land in Oklahoma. The property owners, the Fleners, initiated regulatory proceedings with the OCC (an Oklahoma agency) in July 2020 (Rec. Doc. 39-3) and later filed suit in Oklahoma state court on November 1, 2021. (Rec. Doc. 39-4). Those matters have since resolved and have been dismissed. See IRONSHORE SPECIALTY INSURANCE COMPANY, Plaintiff, v. A&A TANK TRUCK CO., Omni Environmental Solutions, Inc., AIG Specialty Insurance Company, Daniel Flener, Danielle Flener, and Oklahoma Corporation Comission, Defendants., 2023 WL 8188139 (E.D.Okla.).

Meanwhile, Omni/A&A filed this suit in the Fifteenth Judicial District of Louisiana on August 1, 2022, against its insurer, Ironshore, seeking a declaratory judgment for coverage and damages for breach of its insurance contract. Omni/A&A did not initially name their other insurer, AIG, as a defendant. (Original petition at Rec. Doc. 1-2; first amended petition at Rec. Doc. 1-3). On November 16, 2022, Ironshore filed its own complaint for declaratory judgment in the Eastern District of Oklahoma against Omni/A&A, the Fleners, the OCC, and AIG. (EDOK No. 6:22-cv-00323). The EDOK court dismissed claims against the Fleners and the OCC as moot based on their settlement agreements. 2023 WL 8188139 (E.D.Okla.). In the

EDOK case, Ironshore seeks a declaratory judgment that it did not provide coverage to Omni/A&A for the Flener action or the OCC proceedings.

Thereafter, in August 2024, back in the Western District of Louisiana, this Court permitted Omni/A&A to file a second amended complaint naming AIG as a defendant. (Rec. Doc. 35; 36). Ironshore now moves to transfer this case to EDOK for consolidation with its own suit.

## Law and Analysis

28 U.S.C. §1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The Fifth Circuit recently provided new guidance for §1404(a) transfers:

> In general, a plaintiff is master of the complaint, and, as the Supreme Court has admonished, the Court must give some weight to the plaintiffs' choice of forum. That venue choice should be respected so long as plaintiffs meet certain requirements. Put another way, plaintiffs are permitted to engage in a certain amount of forum shopping, though Congress has limited that privilege by enacting § 1404(a), through which defendants can protect themselves from the most blatant forum-shopping. While deference is given to a plaintiff's initial choice of venue, the underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a).

\*\*\*

> Fleshing out § 1404(a)'s requirements, we have held that the party who seeks the transfer must show good cause. And we recently went to pains to underscore exactly what "good cause" means. "At minimum," we stated just a few months ago, "showing 'good cause' requires the movant clearly to demonstrate that its chosen venue is clearly more convenient." We continued: "It is the movant's burden—and the movant's alone—to 'adduce evidence and arguments that clearly establish good cause ....'"
>
> Importantly,…this standard is not met if the movant merely shows that the transferee venue is more likely than not to be more convenient. Likewise, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer. The bar is much higher: to establish "good cause," a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue.

*In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 302–04 (5th Cir. 2024) (cleaned up; emphasis in original).

"In determining whether the movant has 'clearly demonstrated' good cause, courts must consider four private-interest factors and four public-interest factors." *Id*. at 304, citing *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008). In determining whether transfer is proper under §1404(a), the court must consider the following private interest factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The court must also consider the following public interest factors are: "(1) the administrative

4

difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* "These factors are 'not necessarily exhaustive or exclusive,' moreover, 'none ... can be said to be of dispositive weight.'" *Praetorian Specialty Ins. Co. v. Auguillard Const. Co.*, 829 F. Supp. 2d 456, 472 (W.D. La. 2010), citing *id.* at 315, n. 10.

Neither party disputes that both this Court and the EDOK are proper forums. The issue is whether EDOK is clearly more convenient. Ironshore contends that Oklahoma is a more convenient forum, notwithstanding that Omni/A&A filed suit first in this Court. Omni/A&A rely on the first-to-file rule to maintain their earlier filed action in this Court.

> Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. The rule rests on principles of comity and sound judicial administration. The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.

*Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 603 (5th Cir. 1999) (cleaned up).

"The crucial inquiry is one of 'substantial overlap.'" *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.,* 665 F.3d 671, 678 (5th Cir. 2011), quoting *Save Power*

5

*Ltd. v. Syntek Fin. Corp.,* 121 F.3d 947, 950 (5th Cir.1997). The parties do not dispute that the EDOK case and the instant case substantially overlap. That the EDOK action was the first to name AIG as a defendant does not meaningfully distinguish the two actions. Omni/A&A has since added AIG as a defendant in this suit, and AIG has answered (Rec. Doc. 50). Thus, Ironshore may only prevail on its motion to transfer if §1404(a) considerations justify a transfer for convenience.

### I.   Private Interest Factors

Ironshore contends that all witnesses and evidence are located in Oklahoma and that the underlying litigation occurred in Oklahoma, such that private interest factors support transfer. "[A] party seeking a transfer for the convenience of witnesses should specify the key witnesses and make a general statement of what their testimony will cover." *Praetorian,* 829 F. Supp. 2d at 472.

This case is a coverage dispute: Was Ironshore obligated to defend its insureds and provide coverage under the terms of its policy? As Omni/A&A point out, the policy terms were negotiated and issued in this district, and Ironshore communicated with its insureds, Omni/A&A, regarding denial of coverage and defense in this district. (Rec. Doc. 44-1 and 44-4). The key witnesses are representatives of Omni/A&A, located in this district, and representatives of Ironshore, which is incorporated in Arizona, with a principal place of business in Massachusetts, and with involved representatives working in New York. (Rec. Doc. 1, ¶9; Rec. Doc. 44-

6

2 and 44-3). Arizona, Massachusetts, and New York are far removed from both Louisiana and Oklahoma. Ironshore's representatives are no more inconvenienced by appearing in Louisiana than in Oklahoma. As one court noted in denying a similar motion to transfer, "As this issue is equivocal, it does not rise to the 'good cause' burden required to upset [the plaintiff's] choice of venue and weighs against granting the instant motion." *In re Fema Trailer Formaldehyde Prod. Liab. Litig.,* No. MDL 07-1873, 2009 WL 4723138, at *2 (E.D. La. Dec. 7, 2009). Also as in this case, *In re Fema Trailer* involved "a coverage dispute (i.e., whether, pursuant to a contract of insurance, [the insurer] has a duty to defend [the insured])," in which minimal witness testimony regarding the underlying suit would be necessary. *Id.*

Nevertheless, Ironshore argues that a determination of when the alleged pollution incident occurred, as defined by the policy, and other key facts regarding the incident are pivotal to whether its coverage and defense obligations were triggered. While the parties will likely be required to delve into the facts of the alleged contamination to determine coverage and duty to defend, the Court is not persuaded that such facts support transfer on convenience grounds. The underlying litigation having been settled, the parties are likely in possession of much of the information needed to evaluate the underlying case. The bulk—and perhaps all—of

the needed information is likely digitally stored and easily accessible by any party.[2] Ironshore has not shown otherwise. Ironshore has not met its burden to show that substantial investigation must occur in Oklahoma in order to justify transfer.

## II. Public Interest Factors

Regarding public interest factors, Ironshore argues that Louisiana jurors should not be saddled with the obligation of deciding an "Oklahoma-centric" case. The Court disagrees with Ironshore's characterization. Omni, an insured and the parent company of A&A, operates its principal place of business in this district. (Rec. Doc. 44-4). Omni's representatives involved in procuring coverage from Ironshore and who communicated with Ironshore after its denial of coverage are located in this district. (Rec. Doc. 44-1 through 44-3). Louisiana jurors and citizens certainly have an interest in alleged injuries to Louisiana companies.

Ironshore disputes that Louisiana law would apply to interpretation and application of its policy, but Ironshore does not state which other state law should apply. Indeed, Ironshore does not contend that Oklahoma law would apply. In this diversity case, Louisiana's choice-of-law rules apply. *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014) "Under Louisiana's choice-of-

---

[2] In this modern era, parties should not be permitted to rely on the location of evidence as a convenience factor, except in cases where the evidence is incapable of digital storage and access.

law rules, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract." *Id*. The Ironshore policy was issued to Omni in Carencro, Louisiana. It is a Site Pollution Incident Legal Liability Select (SPILLS) policy which provides surplus line coverage under the Insurance Code, presumably of Louisiana. (Rec. Doc. 39-10, p. 1). La. R.S. 22:432 permits procurement of surplus line coverage from surplus line brokers, while La. R.S. 22:431 evidences the Louisiana Legislature's purpose in permitting surplus line insurance to protect persons seeking insurance in Louisiana. Ironshore offers no convincing argument that Louisiana law would not apply to the issues in this suit.

Considering that 1) Omni/A&A filed suit first in this forum, 2) the salient issues in this coverage suit concern a Louisiana insured and a non-resident insurer which has no suit-related connection to Oklahoma beyond the occurrence of the underlying incident, 3) Louisiana's interest in this case, and 4) the anticipated application of Louisiana law, the Court finds that Ironshore has not met its burden to transfer under §1404(a). Ironshore has not clearly shown a significant gain in convenience that will actually materialize if the case is transferred to the EDOK. Accordingly, the Court finds that Ironshore's Motion to Transfer should be denied.

## **Conclusion**

For the reasons discussed herein, the Court recommends that Ironshore Specialty Insurance Company's Motion to Transfer the Instant Action to Oklahoma (Rec. Doc. 39) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 4th day of October, 2024.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE